UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-61240-SMITH/Reid

MARTIN MAHON,

       Petitioner,

v.

RICKY D. DIXON,
*Secretary of the Department of Corrections*,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS**

       Martin Mahon ("Petitioner") filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence entered in the Seventeenth Judicial Circuit, Broward County, Case No. 4D17-1073. *See generally* Pet. [ECF No. 1]. The Honorable Rodney Smith referred this Petition to the undersigned for a report and recommendation. [ECF No. 3].

       The Court has the Secretary of the Department of Corrections' ("Respondent") Response to the Order to Show Cause [ECF No. 7], and Petitioner's Reply and his Notice of Supplemental Authority. [ECF Nos. 10–11]. After reviewing the record, and for the reasons expressed in this Report, the Undersigned **RECOMMENDS** that the Petition [ECF No. 1] be **DENIED**.

## I.      FACTUAL AND PROCEDURAL HISTORY

   A.  Relevant Facts.

       Petitioner is an Irish national who moved to South Florida around twenty years ago. State court Tr. [ECF No. 9-1 at 920]. Petitioner first met his on-and-off-again girlfriend, Gillian

Johnston, in Ireland. [ECF No. 1 at 17]. Petitioner was married to another woman at the time in Ireland. [ECF No. 9-1 at 660]. Nonetheless, Ms. Johnston traveled from Ireland to visit Petitioner, beginning in 2011—at one point they lived together in a Fort Lauderdale apartment. [ECF No. 1 at 17] (citing [ECF No. 9-1 at 581]). The four-year relationship was always tumultuous, resulting in Ms. Johnston securing a temporary injunction against Petitioner, prohibiting him from being within 500 feet of her apartment. [ECF No. 1] (citing [ECF No. 9-1 at 586]).

Petitioner outlined his version of the events leading up to the morning of the incident. He states that while the injunction was still in place, he and Ms. Johnston communicated via text message, and he spent the night at her apartment on two occasions, including the evening before the incident. [ECF No. 1 at 22] (citing [ECF No. 9-1 at 929–30). In the early morning of the incident—while Petitioner was invited to spend the evening—Ms. Johnston made a "smart remark" about Petitioner's wife. [ECF No. 1 at 24] ([ECF No. 9-1 at 952]). This led to verbal exchanges, slapping, and escalated to Ms. Johnston grabbing a kitchen knife. [ECF No. 1 at 24] (citing [ECF No. 9-1 at 952–53]). Acting in self-defense, Petitioner wrestled the knife away from Ms. Johnston, and during the altercation, he "did not realize that he was actually stabbed until he turned and saw that Ms. Johnston had a knife in her hand." [ECF No. 1 at 24] (citing [ECF No. 9-1 at 956–57]).

Petitioner seized the knife and pushed Ms. Johnston back toward the butcher block in the kitchen to prevent her from stabbing him. [ECF No. 1 at 24]. Ms. Johnston then pushed Petitioner back into the sitting room. [*Id.*]. Petitioner believes the fight lasted no longer than a minute. [*Id.*] (citing [ECF No. 9-1 at 958]). He states that while the two were wrestling away the knife, Ms. Johnston was stabbed in neck. [ECF No. 1 at 24] (citing [ECF No. 9-1 at 952–53, 958, 962]).

"[T]he knife was getting pushed around pretty much all over, and [Petitioner] could not recall how she received the other lacerations." [ECF No. 1 at 24].

The State's theory centered on Petitioner breaking into Johnston's home with the intent to commit a murder/suicide. [ECF No. 1 at 19] (citing [ECF No. 9-1 at 960]). Ms. Johnston came back into her apartment after taking out the garbage, and Petitioner grabbed her once inside. [ECF No. 1 at 19] (citing [ECF No. 9-1 at 607–08]). She had not invited Petitioner over the night before, and "[t]he next thing Ms. Johnston knew, someone had their hand over her mouth and a knife in her neck." [ECF No. 1 at 19] (citing [ECF No. 9-1 at 632, 753]). Petitioner told her, "[I]'m going and I'm taking you with me." [ECF No. 1 at 19] (citing [ECF No. 9-1 at 610] quotation marks omitted).  He began strangling Ms. Johnston. [ECF No. 1 at 20] (citing [ECF No. 9-1 at 610]). She fought back and made enough noise to alert her landlord next door. [*Id.*]. She screamed that Petitioner is "going to kill me." [ECF No. 1 at 20] (internal quotation marks omitted). Petitioner then grabbed Ms. Johnston and "stabbed her right in the middle of the back." [*Id.*].

Ms. Johnston's landlord called law enforcement; Petitioner and Ms. Johnston were transported to a nearby hospital for lacerations and other life-threatening injuries. *See* order denying Pet'r's mot. to vacate, set aside or correct sentence [ECF No. 8-2 at 202–07]; [ECF No. 9-1 at 528, 960]. The State charged Petitioner with attempted first degree murder (Count I); burglary of a dwelling (with intent to commit first degree murder as alleged in Count I) (Count II), and violation of restraining order (Count III). [ECF No. 1 at 32].

B.  The Trial Court Proceedings.

The State's theory of prosecution was that Petitioner "unlawfully entered the victim's residence in the early morning hours with a premeditated design to murder [Ms. Johnston] . . . ." [*Id.*]. Petitioner raised a theory of self-defense as his sole defense, claiming that he "was invited into the victim's residence, spent the night, and in the morning was attacked by the victim with no

way to retreat, resulting in the Petitioner justifiably using deadly force in self-defense . . . ." [*Id.*]. The jury found Petitioner guilty of the lesser included offense of attempted second-degree murder in Count I, and guilty of violating a restraining order alleged in Count III. The jury acquitted Petitioner of burglary in Count II. [ECF No. 1 at 32]. The trial court imposed a thirty-year sentence. [*Id.* at 2].

C.   Direct Appeal.

Petitioner appealed his judgment and sentence to the Florida Fourth District Court of Appeal ("Fourth DCA"). The court affirmed per curiam. *Mahon v. State*, 275 So. 3d 1239 (Fla. 4th DCA 2019) (table); [ECF No. 8-1 at 260]. The Fourth DCA later denied Petitioner's *pro se* motion for a rehearing. [ECF No. 8-1 at 262–69].

D.   Rule 3.850 Motion.

Next, Petitioner filed his first motion to vacate the judgment and sentence under Florida Rule of Criminal Procedure 3.850 ("3.850 motion"), arguing ineffective assistance of counsel. *See generally* [ECF No. 8-2 at 97–105]. The Fourth DCA denied the petition without prejudice. [*Id.* at 107]. Petitioner, through counsel, then filed another motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising six claims of ineffective assistance of trial counsel and a claim of a *Giglio*[1] violation. Petitioner withdrew Grounds 5, 6, and 7 in his Reply. [ECF No. 8-2 at 183 ¶ 22]. The trial court summarily denied the motion. [*Id.* at 186].

Petitioner appealed the denial of his 3.850 motion to the Fourth DCA. [*Id.* at 192]. Petitioner raised in his brief four grounds of ineffective assistance of counsel. *See generally* [*id.* 197–245]. The Fourth DCA affirmed the trial court's ruling. [*Id.* at 280]; *Mahon v. State*, 335 So. 3d 698 (Fla. 4th DCA 2022) (per curiam) (table). The Fourth DCA then denied Petitioner's motion

---

[1] *See Giglio v. United States*, 405 U.S. 150 (1972).

for rehearing. [ECF No. 8-3 at 9]. The court later issued its mandate. [*Id.* at 11]. Petitioner then filed this Petition.

E.  The Instant Petition.

Petitioner raises four grounds for federal habeas corpus relief:

**Ground 1**: Ineffective Assistance of Counsel — Petitioner was deprived the effective assistance of counsel as guaranteed by the [Sixth] and [Fourteenth] Amendments to the United States Constitution, where trial counsel failed to object to the circular and confusing jury instruction on self-defense, which negated Petitioner's sole defense.

**Ground 2**: Ineffective Assistance of Counsel — Petitioner was deprived the effective assistance of counsel as guaranteed by the [Sixth] and [Fourteenth] Amendments to the United States Constitution, where trial counsel failed to object to erroneous written jury instructions which negated Petitioner's sole defense.

**Ground 3**: Ineffective Assistance of Counsel — Petitioner was deprived the effective assistance of counsel as guaranteed by the [Sixth] and [Fourteenth] Amendments to the United States Constitution, where trial counsel failed to request a special instruction and/or object to the incomplete instruction regarding the duty to retreat under the self-defense law.

**Ground 4**: Ineffective Assistance of Counsel — Petitioner was deprived the effective assistance of counsel as guaranteed by the [Sixth] and [Fourteenth] Amendments to the United States Constitution, where trial counsel failed to object when the prosecutor misstated the law during closing argument, which deprived Petitioner of his only defense.

[ECF No. 1 at 30, 40, 45, 52].

## II.    STATUTE OF LIMITATIONS AND EXHAUSTION

The parties agree that this Petition was timely filed, and that Petitioner exhausted his substantive claims on Grounds 1–2 and 4. [ECF Nos. 1 at 14; 7 at 5, 8]. Respondent contests exhaustion of Ground 3, [ECF No. 7 at 11] which the Court will discuss below *infra* p. 19.

## III.    LEGAL STANDARD

A.  Standard of Review

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's . . . determination of the facts is unreasonable only if no fair-minded jurist could agree with the state

court's determination . . . ." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and internal quotation marks omitted).

Under § 2254(d), where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

B. Ineffective Assistance of Counsel Principles

To establish a claim of ineffective assistance of counsel, the petitioner must show that the counsel's performance was deficient, and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Thornell v. Jones*, 144 S. Ct. 1302 (2024). To prove deficiency, he must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Strickland*, 466 U.S. at 688. To prove prejudice, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Harrington*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner has the burden of proof on his ineffectiveness claim, *Holsey*, 694 F.3d at 1256, as well as the burden of proof under § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

## IV.   DISCUSSION

A. *Ground 1 Does Not Establish that Petitioner's Counsel was Ineffective for Failing to Object to the Confusing Jury Instruction Because the State Court Found No Fundamental Error and Petitioner has not Shown that the State Court's Determination Was Contrary to, or an Unreasonable Application of the Law.*

Petitioner argues that "[t]he disputed factual issue at trial was whether the Petitioner unlawfully entered the victim's residence in the early morning hours with a premeditated design to murder her[,]" which is the State's theory of prosecution. [ECF No. 1 at 32]. "[O]r whether . . . Petitioner was invited into the victim's residence, spent the night, and in the morning was attacked by the victim with no way to retreat, resulting in the Petitioner justifiably using deadly force in self-defense . . . ." [*Id.*].

The jury was given this instruction, in pertinent part, and without objection from Petitioner's counsel:

> The use of deadly force is justifiable if the defendant reasonably believed the force was necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him or any attempt to commit aggravated battery upon him. However, the use of deadly force is not justified if you find that MARTIN MAHON was attempting to commit, committing, or escaping after the commission of Attempted First Degree Murder, Attempted Second Degree Murder, or Attempted Manslaughter.

[*Id.* at 33] (quoting ECF No. 9-1 at 1122]. Under this instruction, "if the jury concluded that Petitioner's actions constituted a justifiable use of deadly force against Ms. Johnston, it would serve as a defense to the charges of attempted first degree murder, attempted second degree murder, or attempted manslaughter." [ECF No. 1 at 33]. Petitioner claims error when the trial court instructed the jurors that using deadly force would not be justifiable if he "was attempting to

commit, committing, or escaping after the commission of Attempted First Degree Murder, Attempted Second Degree Murder, or Attempted Manslaughter . . . ." [*Id.*]. Put differently, the instruction supported Petitioner's use of self-defense if the force was necessary to prevent him great bodily harm or death against someone trying to murder or assault him. *See* [ECF No. 9-1 at 1122]. While at the same time, the jury was required to not find a valid self-defense theory if Petitioner was committing or escaping after the commission of attempted first or second-degree murder or attempted manslaughter — "the very crimes the Petitioner attempted to justify as having been committed in self-defense." *See* [ECF No. 1 at 33].

Petitioner, who was found guilty of the lesser-included charge, attempted second-degree murder, argues the instruction led to a circular and confusing instruction. [*Id.* at 36]. Because "the forcible felony of attempted murder was the very offense to which the Petitioner was claiming justifiable use of deadly force[,]" the instruction deprived him of his sole defense. [*Id.* at 34]. Because there was no independent forcible felony alleged, the jury instruction on the forcible felony exception to justifiable use of deadly force should never have been given to the jury. [*Id.*]. "The trial court erred by instructing the jury that the use of deadly force was not justified if the Petitioner was attempting to commit, committing, or escaping after the commission of Attempted First Degree Murder, Attempted Second Degree Murder, or Attempted Manslaughter." [*Id.* at 33–34] (quotation marked omitted).

Since Petitioner's counsel failed to rectify the jury instruction, he "suffered prejudice, because the erroneous instruction deprived Petitioner of his sole defense and essentially locked the jury into a verdict." [*Id.* at 38]. If counsel had "lodged the appropriate objection, the instruction would have been omitted because there was no independent forcible felony to plug into the instruction." [*Id.*].

Respondent raises two points. First, Ground 1 does not establish that Petitioner's counsel was ineffective for objecting since the postconviction court found no *fundamental* error in Petitioner's counsel. [ECF No. 7 at 19–20]. This Court, Respondent argues, must now treat those decisions with deference. [*Id.* at 20] (citing *Pinkney v. Sec'y, DOC*, 876 F.3d 1297, 1297–99 (11th Cir. 2017); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)).

Petitioner failed to demonstrate fundamental error since the forcible felony instruction did not "infect[] the entire trial" to the point where his conviction ran afoul of the Fourteenth Amendment. [*Id.* at 22] (citing *Henerson v. Kibbe*, 431 U.S. 145, 154 (1977)). Respondent seems to concede that the instruction was erroneous but asserts that the instruction at issue was only "one errant sentence buried in a sea of instructions providing the jury with ample instruction on self-defense." [ECF No. 7 at 22]. The jury, for example, was still instructed that "'attempted homicide is justifiable and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the attempted homicide.'" [*Id.*] (citing [ECF No. 9-1 at 1109–10]). Second, the court twice instructed the jury that Petitioner can be "justified in using deadly force if he reasonably believed it was necessary to prevent imminent death or great bodily harm." [ECF No. 7 at 23] (citing [ECF No. 9-1 at 1118]). And the court instructed the jury to "consider the circumstances at the time the deadly force was used, and that Petitioner must have believed the danger to be so real to justify the use of deadly force." [ECF No. 7 at 23] (citing [ECF No. 9-1 at 1121]).

(i)     Analysis.

While the postconviction court did not explicitly state that this instruction was erroneous, it found that the jury instructions as a whole posed no fundamental error "as it provided the jury

with the option to believe Defendant's version of the events." [ECF No. 8-2 at 188]. The decision

reads in full:

> This claim is refuted by the record. The Court finds the entire instruction from the Court was proper, as it provided the jury with the option to believe Defendant's version of the events, or any part thereof, that he acted in self-defense, and therefore, could not have committed the charged offense of attempted murder or any of its lesser offenses, or the victim's version of the events, or any part thereof, that Defendant entered her home without permission and attacked her with a knife as well as cut his own throat during the confrontation. The jury would have acquitted Defendant of the charged offense in the first count, as well as any lesser offenses, if it had believed his version of the events.
>
> The Court notes that Defendant raised this matter on direct appeal as a claim of trial court error. The State argued on appeal that error did not exist because Defendant was subject to the 2014 version of the Stand-Your-Ground law, which required the person who used deadly force could not be engaged in unlawful activity. The Fourth District Court, as noted above, per curiam affirmed Defendant's convictions and sentences.
>
> As Defendant has not established a deficiency on the part of his trial counsel or any prejudice to the outcome of his case, this claim is denied.

[*Id.*]. The Fourth DCA affirmed the ruling. [*Id.* at 280]. The parties reference two cases for support,

though neither is fully applicable here.

Petitioner cites *Estevez v. State*, 901 So. 2d 989 (Fla. 4th DCA 2005), where the Fourth

DCA held that the trial court committed fundamental error "by instructing jurors in a single

aggravated battery case that the defendant's use of force was not justifiable if he was attempting

to commit, committing, or escaping after commission of an aggravated battery." 901 So. 2d at 990.

Although the appellant "was alleged to have committed only one act, aggravated battery, the trial

court gave an instruction that 'is normally given in situations where the accused is charged with at

least two criminal acts, the act for which the accused is claiming self-defense and a separate

forcible felony.'" *Id.* at 991; *see also Giles v. State*, 831 So. 2d 1263, 1265 (Fla. 4th DCA 2002)

(stating that the forcible-felony exception applies only when "the accused is charged with at least

two criminal acts, the act for which the accused is claiming self-defense and a separate forcible felony.").

Because *Estevez* involved only one criminal act, the court found fundamental error. "Giving such instruction under these circumstances forced the jurors to decide his guilt or innocence in a manner that was patently circular, confusing and had the overall effect of negating the defendant's sole defense. *Estevez*, 901 So. 2d at 991. The Fourth DCA reversed the appellant's conviction and remanded the case for a new trial. *Id.* at 992. *Estevez*, however, was a direct appeal from the trial court, *see id.* at 989, and thus did not involve a court applying the highly deferential standards provided under *Strickland* and § 2254, *see Harrington*, 562 U.S. at 105.

On the other hand, Respondent cites to *Pinkney* in which the appellant raised ineffective assistance of counsel when his attorney failed to object to a jury instruction that included a forcible felony exception that limited his self-defense theory. 876 F.3d at 1294. The trial court instructed the jury "that, in certain circumstances, the killing of a human being is excusable, and therefore, lawful if it is committed by accident. . . . [I]t also instructed the jury on self-defense and the forcible felony exception to that defense." *Id.* at 1301 (cleaned up). The Eleventh Circuit agreed that instruction was *erroneous* because it "instructed the jury that [the appellant] was not entitled to claim self-defense to the charge of manslaughter if he was committing or attempting to commit manslaughter. That instruction was circular because under it the act of manslaughter ruled out the defense of self-defense to the charge of manslaughter. *Id.* at 1296. The Eleventh Circuit also agreed that a criminal defendant's counsel failing to object to such a jury instruction might amount to error, but held there was no *fundamental* error for several reasons. *Id.* (citing *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991)).

First, the appellant had claimed not only self-defense but also claimed the killing was accidental. So, his defenses were not entirely precluded. Second, the appellant's counsel "will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney*, 876 F.3d at 1297. The Court found the appellant's "claim of self-defense was extremely weak." *Id.* at 1300 (internal citation and quotation marks omitted.). The Eleventh Circuit drew support from the state court finding that the self-defense claim "'strained even the most remote bounds of credulity' and that the defendant had provided inconsistent testimony and a 'very questionable hypothesis' about how the victim got one of his wounds. *Id.* at 1301. (internal citation omitted). Therefore, "even if an erroneous forcible-felony instruction could constitute fundamental error . . . the instant case most certainly does not present a compelling demand for the application of the fundamental-error doctrine." *Id.* (internal citation omitted). Lastly, other evidence presented contradicted the appellant's testimony and severely contradicted his self-defense theory. *Id.* at 1301; *cf.* [ECF No. 9-1 at 951–69].

Here, although this instruction may have been erroneous, it was not fundamental error that would satisfy the prejudice prong in *Strickland*. The jury had a clear instruction: If "'you have reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you should find the defendant not guilty.'" [ECF No. 7 at 23] (citing [ECF No. 9-1 at 1123]). The trial court instructed the jury numerous times on the theory of self-defense. The court informed the jury that "attempted homicide is justifiable and lawful if necessarily done while resisting an attempt to murder or commit a felony upon the defendant, or to commit a felony in any dwelling house in which the defendant was at the time of the attempted homicide." [ECF No. 9-1 at 1109–10]. The court informed the jury twice that if Petitioner reasonably believed deadly force was

necessary to prevent imminent death or great bodily harm, self-defense is justified. [*Id.* at 1109,

1118]. And again, the Court told the jury that it:

> [M]ust consider the circumstances by which [Petitioner] was surrounded at the time the force was used. The danger need not have been actual, however, to justify the use of deadly force, the appearance of danger must have been so real, that a reasonably cautious and prudent person, under the same circumstances, would have believed that the danger could be avoided only through the use of that force. Based upon appearances, the defendant must have actually believed that the danger was real.

[*Id.* at 1121]. Although the contested instruction was arguably confusing and circular, the

"instructions given, *when viewed in their entirety*," did not deprive Petitioner's "defense of self-

defense and permitted the jury to acquit [him] if they believed his actions were lawful." *See*

*Hamilton v. McNeil*, No. 08-23150-CIV-SEITZ, 2010 WL 3118590, at *7 (S.D. Fla. July 9, 2010)

(stating that "'juries use their common experience and apply a street version of self-defense that

allows a defendant to use a reasonable amount of force under the circumstances, and no more.'")

(quoting *Farmer v. State*, 975 So. 2d 1275, 1277 (Fla. 4th DCA 2008), *report and recommendation*

*adopted*, No. 08-23150-CIV-SEITZ, 2010 WL 3118588 (S.D. Fla. Aug. 5, 2010); *Hollingsworth*

*v. McNeil*, No. 05-22510-CIV, 2010 WL 11623385, at *12 (S.D. Fla. June 28, 2010), *report and*

*recommendation adopted*, No. 05-22510-CIV, 2010 WL 11623386 (S.D. Fla. Oct. 5, 2010), *aff'd*

*sub nom. Hollingsworth v. Att'y Gen.*, 429 F. App'x 958 (11th Cir. 2011).

Moreover, absent a showing that the state court's determination was contrary to, or an

unreasonable application of the law, this Court must respect the prior state court's decision. *See*

*Pinkney*, 876 F.3d at 1297–98 ("[T]his Court must defer to the Florida court's underlying

determinations of state law.") (internal quotation marks omitted). Petitioner brought this exact

claim to the postconviction court. *See* [ECF No. 8-2 at 188]. The postconviction court found no

fundamental error. *See Pinkney*, 876 F.3d at 1298–99.

Therefore, "[i]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." [ECF No. 7 at 20] (quoting *Estelle*, 502 U.S. 62, 67 (1991)). And "although the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *McGuire v. Sec'y, Dep't of Corr.*, No. 8:16-CV-1934-KKM-UAM, 2023 WL 6196858, at *13 (M.D. Fla. Sept. 22, 2023), *certificate of appealability denied sub nom. McGuire v. Sec'y, Fla. Dep't of Corr.*, No. 23-13295, 2024 WL 4505612 (11th Cir. Aug. 8, 2024) (quoting *Pinkney*, F.3d at 1295); *see Harris v. Sec'y, Dep't of Corr.*, No. 8:16-CV-3199-MSS-CPT, 2021 WL 5331202, at *19 (M.D. Fla. Nov. 16, 2021) ("This Court must defer to the state court's ruling on the underlying state law question of the correctness of the jury instruction.") (internal citations omitted).

Given the facts and case law, Petitioner cannot satisfy the requirements of *Strickland* under § 2254(d). *See* 466 U.S. at 687; *Pinkney*, 876 F.3d at 1299.

B.   *Ground 2 Does Not Establish Error Sufficient to Grant Federal Habeas Relief Because the Trial Court Orally Corrected the Erroneous Written Jury Instruction and Petitioner has not Shown that the State Court's Determination Was Contrary to, or an Unreasonable Application of the Law.*

Petitioner contends that his counsel's performance fell below objective standards of reasonableness by not objecting to an erroneous written instruction on self-defense. [ECF No. 1 at 43–44]. The jury, he argues, received a "fundamentally flawed" jury instruction that did not "include the lesser included offenses of attempted second degree murder and attempted manslaughter as additional crimes for which the Petitioner was entitled to claim self-defense." [*Id.* at 40]. The written instruction, stated in relevant part, reads:

It is a defense to the crime of Attempted First Degree Murder if the actions of MARTIN MAHON constituted the justifiable use of deadly force.

[*Id.*] (citing [ECF No. 9-1 at 1118]. The Court erroneously mentioned only first-degree murder, but almost immediately held a sidebar conference with the State to correct the error. *See* [ECF No. 7 at 25]. The court then verbally informed the jury:

> THE COURT: It is a defense to the crimes of attempted first degree murder, attempted second degree murder or attempted manslaughter if the actions of Martin Mahon justify the use of deadly force.

[ECF No. 7 at 25] (quoting [ECF No. 9-1 at 1119–20]. Petitioner concedes the court must have noticed the omission "as the trial court (after an off the record conversation with the State and trial counsel) *orally* supplemented the written instructions by including the missing lesser included offenses[.]" [*Id.* at 40–41].

Plaintiff contends that his counsel erred by failing to request that these oral instructions be memorialized in writing. As a result "the flawed written instruction on justifiable use of deadly force deprived the Petitioner of a fair trial because it limited the Petitioner's use of self-defense to the charged offense of attempted first degree murder." [*Id.* at 42]. He continues that there was nothing in the written instructions to "inform the jury that self-defense also applied to the lesser included offenses of attempted second degree murder and attempted manslaughter. This was crucial because the jury ultimately convicted the Petitioner of the lesser included offense of attempted second degree murder." [*Id.* at 43]. According to Petitioner, this violated his Sixth and Fourteenth Amendment rights and was prejudiced to his defense. [*Id.* at 43].

    (i)    <u>Analysis.</u>

This Ground fails for three reasons. First, the State postconviction court came to a well-reasoned conclusion as it found that "the trial court orally corrected the initial jury instructions, and there is no evidence to establish that the jurors disregarded the court's instructions." [ECF No.

8-2 at 188]. Relatedly, the evidence of the sidebar conference also supports the postconviction court's finding:

> THE COURT: Justifiable use of deadly force. You only identify justifiable use of deadly force, is that correct or incorrect.
>
> [PROSECUTOR B]: It's everything included in Count I.
>
> THE COURT: So the lessers [sic] all are to be included.
>
> [PROSECUTOR B]: Yes.
>
> THE COURT: All right.

[ECF No. 7 at 25 n.6] (quoting [ECF No. 9-1 at 1118–19]). The trial court then instructed the jury numerous times of exactly what Petitioner wanted, that "justifiable use of deadly force is a defense to attempted first degree murder and the lesser-included offenses and even pointed the jury to the page number of the written jury instructions." [ECF No. 7 at 26].

Second, there is no prohibition against oral jury instructions, and failure to request a written is not *ipso facto* unconstitutional. *See, e.g.*, *United States v. Moreno*, 572 F. App'x 807, 808–09 (11th Cir. 2014) ("The court also verbally instructed the jury consistent with the written instructions."); *Taylor v. Culliver*, No. 4:09-CV-00251-KOB, 2012 WL 4479151, at *110 (N.D. Ala. Sept. 26, 2012), ("'The jury was properly instructed on aggravating circumstances and jurors are presumed to follow the oral instructions of the trial court.'") (quoting state postconviction order), *aff'd*, 638 F. App'x 809 (11th Cir. 2015); *cf. United States v. Diaz*, 190 F.3d 1247, 1261 (11th Cir. 1999) (Cook, J., concurring in part) (stating that the jury read from an erroneous instruction that referred to possession with intent to distribute instead of distribution. The court failed to correct the instruction either verbally or in writing).

Indeed, the jury is "presumed to follow" the instructions presented, absent evidence to the contrary. *Tang How v. Edward J. Gerrits, Inc.*, 961 F.2d 174, 179 (11th Cir. 1992) (internal citation

omitted); *United States v. Lopez*, 649 F.3d 1222, 1237 (11th Cir. 2011) (collecting cases); *Taylor*, 2012 WL 4479151, at *110; *Gonzalez v. Sec'y, Fla. Dep't of Corr.*, No. 16-13092-G, 2017 WL 11684514, at *3 (11th Cir. Feb. 6, 2017) (internal citation omitted); *Montgomery v. State*, 337 So. 3d 363, 367 (Fla. 4th DCA 2022) (citing *Lowe v. State*, 259 So. 3d 23, 52 (Fla. 2018)).

Here, there is no reason to conclude that the jury ignored the verbal jury instructions that the trial judge repeated multiple times. Neither the Petition nor Petitioner's Reply present evidence to support such a finding. Petitioner's Reply simply repeats its previous assertion that the "written instructions informed the jury that justifiable use of deadly force was also an available defense to the lesser offenses of attempted second degree murder or attempted manslaughter, a reasonable probability exists the jury would have acquitted Petitioner accordingly." *See* [ECF No. 10 ¶ 13]. Petitioner cites to one case, *Neal v. State*, 169 So. 3d 158, 163 (Fla. 4th DCA 2015), for the proposition that "when jurors are faced with both correct and erroneous instructions . . . there is no reason to believe that they are likely to intuit which is the correct one and which is the erroneous one." [*Id.* ¶ 12] (quoting 169 So. 3d at 163) (in turn quoting *Fields v. State*, 988 So. 2d 1185, 1189 (Fla. 5th DCA 2008)). But *Neal* acknowledges that an erroneous instruction must be reviewed in the context of the other evidence given, the evidence adduced at trial and the arguments of counsel *Id.* at 161.

Thus, while a written instruction would be better, counsel's failure to raise this objection does not violate *Strickland*. Considering the numerous times the trial court repeated its verbal instruction, counsel was under no obligation to raise a superfluous request. *See Obadiah v. United States*, No. 20-CV-24229, 2022 WL 1603706, at *7 (S.D. Fla. Jan. 5, 2022) ("There is no duty to pursue issues which have little or no chance of success[.]") (citing *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001)); *Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999) ("Trial counsel

cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding."). Ultimately, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Ross v. Oklahoma*, 487 U.S. 81, 91 (1988) (internal citation and quotation marks omitted).

Accordingly, this Ground is insufficient to establish a *Strickland* violation under § 2254(d).

C.   *Ground 3 Does not Establish Ineffective Assistance of Counsel for Counsel's Failure to Request a Special Instruction or Object to the Incomplete Instruction and that the State Court's Determination was Contrary to or an Unreasonable Application of the Law.*

Petitioner insists that trial counsel was ineffective for failing to request a special jury instruction and failing to object to an incomplete instruction concerning his duty to retreat under Florida's self-defense law. [ECF No. 1 at 45–52]. The special instruction would have informed the jury that even if he was engaged in criminal activity at the time of the crime, if he had retreated to a wall or if retreat would have been futile, then he was still justified in using deadly force to defend himself.

The Court must address the possible exhaustion issue first before proceeding to the merits of this Ground. *See Hamm v. Comm'r, Ala. Dep't of Corr.*, 620 F. App'x 752, 762 (11th Cir. 2015) (citing *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991)). Respondent argues that Ground 3 is procedurally barred because it is really a "claim of trial court error improperly couched as a claim of ineffective assistance of counsel as it 'concern[ed] the sufficiency of the instructions and what [Petitioner] asserts the [trial court] should have given the jury with respect to the justifiable use of deadly force.'" [ECF No. 7 at 11] (quoting [ECF No. 8-2 at 188]). Moreover, Petitioner raised this argument in his state habeas petition as ineffective assistance of appellant counsel, arguing that his appellate counsel should have raised this trial court error on direct appeal. [ECF No. 7 at 27–28]. As Petitioner never "raised the sufficiency of the jury instructions regarding the scope of the duty

to retreat on direct appeal and in his state habeas petition raised it in terms of ineffective assistance of appellate counsel," he would now be procedurally barred from this Court's review. [ECF No. 7 at 12] (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 800 (1991)). Ultimately, Petitioner cannot state a reason for overcoming this bar, or why this Ground should be entitled to federal habeas review. [ECF No. 7 at 12] (citing *Coleman*, 501 U.S. at 750). In any event, the state court denied the claim as not cognizable under § 2254 because it should have been raised on direct appeal and further denied it on its merits.

Despite Respondent's argument, Petitioner simply maintains in his Reply that the claim is properly raised as an ineffective assistance of trial counsel claims. [ECF No. 10 ¶ 16] (citing *Cherry v. State*, 659 So. 2d 1069, 1072 (Fla. 1995)).

When a habeas petitioner fails to assert his claims to the state court in a "proper manner, and the state court refuses to address the merits based on state law, the federal habeas court is precluded from hearing the merits[.]" *Carruth*, 93 F.4th at 1354 (collecting cases). Procedural default may occur "when the petitioner never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court." *Carruth*, 93 F.4th at 1355 (internal citation and quotation marks omitted). The only two exceptions are a "showing of cause for the failure to properly present the claim and actual prejudice, or that the failure to consider the claim would result in a fundamental miscarriage of justice." *Id.* at 1354. Attorney negligence is usually not considered good cause to excuse procedural default. *Id.* at 1355 (citing *Coleman*, 501 U.S. at 753). Attorney performance is only relevant if the procedural default stems from counsel's constitutionally deficient performance. *Id.*

(i)      <u>Analysis.</u>

This Court finds that the state court's determination that the claim is not cognizable under § 2254 because it should have been raised on direct appeal was not contrary to or an unreasonable application of the law. Petitioner's argument boils down to a claim that the court should have modified the standard jury instruction on use of deadly force. The Court will nevertheless weigh in on the merits.

Petitioner contends that the standard jury instruction was insufficient for his self-defense claim due to evidence indicating that he was engaged in criminal activity when entering Ms. Johnston's home, violating the injunction. [ECF No. 1 at 46]. Those standard instructions, as Petitioner avers, gave him no right to stand his ground, and instilled a duty to retreat "because he was engaged in criminal activity by violating the injunction." [*Id.*].

First, the Court agrees with the postconviction court that the standard jury instruction provided here to justify use of deadly force adequately informed the jury. [ECF No. 8-2 at 188]; *see also* [*id.* at 107] (Fourth DCA affirming denial of Rule 3.850 motion). Any supplemental language Petitioner requested "did not apply in this case because Defendant, by violating the terms of the restraining order, voluntarily put himself in a place he was not lawfully entitled to be." [*Id.* at 188]. And even if the Court did provide supplemental language, "it is a purely speculative claim that it would have changed the outcome of this case." [*Id.*]; *see also Davis v. Sec'y, DOC*, No. 2:12-CV-659-FTM-38CM, 2015 WL 3509324, at *7 (M.D. Fla. June 4, 2015) (affirming denial of a Rule 3.850 motion since "[t]he standard jury instruction given was the law at the time of the offense relating to [the petitioner's] theory of defense and was not misleading or confusing.") (internal citation and quotation marks omitted).

Second, standard jury instructions concerning are presumed to be correct. *See, e.g.*, *Raia v. Jones*, No. 16-CIV-14574, 2018 WL 10322072, at *3 (S.D. Fla. Feb. 1, 2018), *report and recommendation adopted*, No. 16-14574-CIV, 2018 WL 10322067 (S.D. Fla. Feb. 28, 2018) ("Under Florida law, standard jury instructions such as the one to which Petitioner objects are presumed correct.") (citing *Peters v. State*, 33 So. 3d 812, 814 (Fla. 4th DCA 2010)); *Taylor v. Buss*, No. 10-21871-CIV-HUCK, 2011 WL 13133857, at *6 (S.D. Fla. June 1, 2011), *report and recommendation adopted*, No. 10-21871-CIV, 2011 WL 13133858 (S.D. Fla. June 27, 2011), *aff'd sub nom. Taylor v. Sec'y, Dep't of Corr.*, 507 F. App'x 887 (11th Cir. 2013).

Petitioner's counsel could have been ineffective if, for example, the Florida Supreme Court invalidated the standard jury instruction and counsel failed to object to its reading, resulting in prejudice. *See Reyes v. Fla. Dep't of Corr.*, No. 22-CV-60567, 2023 WL 3178563, at *14 (S.D. Fla. Apr. 11, 2023) (citing *Griffin v. State*, 866 So. 2d 1, 15 (Fla. 2003), *report and recommendation adopted*, No. 22-CV-60567-RAR, 2023 WL 3172551 (S.D. Fla. May 1, 2023)). Of course, that is not the facts provided here, and the Court cannot see how failing to object standard jury instructions violates *Strickland*.

Third, even if Petitioner's counsel did make an objection, requesting a special jury instruction would have been futile as he did not satisfy the required elements. To be entitled to a special jury instruction, a criminal defendant must show that: "(1) the special instruction is supported by the evidence; (2) *the standard instruction did not adequately cover the theory of defense*; (3) and the special instruction is a correct statement of the law and is not misleading or confusing." *Portieles v. Inch*, No. 17-24663-CV, 2020 WL 5881274, at *15 (S.D. Fla. July 9, 2020) (citing *Wheeler v. State*, 4 So. 3d 599, 605 (Fla. 2009), *report and recommendation adopted*, No. 17-24663-CV, 2020 WL 5879337 (S.D. Fla. Oct. 2, 2020)).

The only element in contention is whether the standard instruction adequately covered the self-defense theory. *See* [ECF No. 7 at 29]. Trial counsel argued that because the victim invited Petitioner into her home, Petitioner was "allowed to fight for his life" when the Ms. Johnston stabbed him. [*Id.*]. Petitioner testified during the trial that he was not violating the injunction and had a right to be in Ms. Johnston's home. [*Id.*] (citing [ECF No. 9-1 at 989–90 ("Gillian had told me prior to that that she electronically asked for it to be rescinded, so we were going in thirty days back to see Judge Kaplan, which would have been the 3rd of November . . . ."); [ECF No. 9-1 at 1012] ("[W]hether I wanted to believe it or not, I took it that I was not in violation of it."); [*id.* at 1041] ("I believed that the Injunction was lifted, because I guess I wanted to."). Additionally, his counsel argued that because Ms. Johnston invited Petitioner into her home, Petitioner was "allowed to fight for his life" when the victim stabbed him. [ECF No. 7 at 29] (citing [ECF No. 91 at 1172, 1189–90]).

Therefore, the standard instruction informed the jury that if they believed Petitioner's self-defense theory, then he "was justified in using deadly force in a place he had the right to be because he was not violating the injunction, then he had no duty to retreat." [ECF No. 7 at 29] (citing [ECF No. 9-1 at 1118]). Building on this argument, Respondent claims that Petitioner's counsel's failure to object did not violate *Strickland*, as there was no evidence of prejudice or indication that, had the special instruction been provided, the proceedings would have been any different. [ECF No. 7 at 30] (citing *Strickland*, 466 U.S. at 695).

Petitioner adds in his Reply that "the standard jury instruction on the duty to retreat did not sufficiently advise the jury of the parameters of the duty to retreat when an individual was engaged in criminal activity." [ECF No. 10 ¶ 18] (internal citations omitted).

The Court agrees with Respondent that even without the special instruction, the jury *could* have found that Petitioner was justified in using deadly force against the victim based upon Petitioner's testimony and his counsel's argument. *See* [ECF No. 7 at 30]. This would be possible if the jury determined that the use of deadly force was reasonable given the circumstances. [*Id.* at 30]. The jury was nonetheless still required to consider whether Ms. Johnston invited Petitioner into his home and "subsequently attacked by the victim and placed in a position where he had to defend himself." [*Id.*]. Moreover, Petitioner testified multiple times that he was not violating the injunction, and, therefore, had a right to be in the victim's home. [*Id.* at 29] (citing [ECF No. 9-1 at 989–90, 1012, 1041). The standard jury instruction adequately covered the defense theory. If the jury accepted that Petitioner was justified in using deadly force in a location where he had the right to be—as he was not violating the injunction—then Petitioner had no duty to retreat and was entitled to stand his ground. *See* [ECF No. 9-1 at 1118].

Third, based upon Petitioner's own testimony, there was little justification for including a special jury instruction as he took no effort to retreat. *See Reyes*, 2023 WL 3178563, at *14 (finding neither a *Strickland* violation nor that the requested instruction for the common law duty to retreat were necessary because there was no evidence that retreating "would have increased [the petitioner's] own danger," as needed under the common law duty to retreat). Petitioner testified that he was "bent over kneeling to get [his] flip-flops" when Ms. Johnston started slapping him after he made a gratuitous remark to her. [ECF No. 9-1 at 953]. Petitioner then "saw a knife in her hand and [he] reached up to grab her and [they] started to tussle. [*Id.*]. Still, he testified that he was near the sofa, right by the front door of the tiny apartment. *See* [*id.* at 969]. Instead of possibly retreating, Petitioner fought back; he took the knife away from Ms. Johnston and move her *back* into the kitchen, making a need for a special jury instruction unnecessary. [*Id.* at 953, 957].

Therefore, even assuming this Ground is not procedurally barred, Petitioner has not established prejudice on the scope of his duty to retreat as a special instruction would not likely change the outcome in light of the evidence. *See Strickland*, 466 U.S. at 687 (1984). And, importantly, he has failed to establish that the state court's rejection of his claim was contrary to or an unreasonable application of the law.

D.  *Ground 4 Fails Because Petitioner's Counsel was not Ineffective by Failing to Object When the Prosecutor Misstated the Law During Closing Arguments and the State Court's Determination was not Contrary to or an Unreasonable Application of the Law.*

Lastly, Petitioner contends that his counsel was ineffective by failing to object to a portion of the prosecution's closing argument. He contends the prosecutor misstated the law regarding the use of self-defense when engaged in criminal activity.

In closing, the prosecution told the jury:

[PROSECUTOR]: In the instruction the judge will read to you and each of you will take back, in order for him to even claim justifiable use of deadly force, he had to be doing something lawful and had a legal basis for doing it. The injunction took this away.

. . .

[PROSECUTOR]: [I]n order for the defendant to claim self-defense, . . . [i]t starts out: Martin Mahon was justified in using deadly force if he reasonably believed that such force was necessary to prevent imminent death or great bodily to himself if Martin Mahon was not otherwise engaged in criminal activity and was in a place he had a right to be, and had no duty to retreat and had the right to stand his ground. That injunction says he can't be there. Self-defense, justifiable use of force, does not apply in this case.

[ECF No. 1 at 52–53] (citing [ECF No. 9-1 1189–90]) (emphasis deleted). Petitioner argues that this was a "gross mischaracterization" of Florida law, and that the common law duty of self-defense can apply even when a criminal defendant was engaging in criminal activity. [ECF No. 1 at 53] (citing *Owens v. State*, 261 So. 3d 585, 589 (Fla. 4th DCA

2018); *Dorsey v. State*, 74 So. 3d 521 (Fla. 4th DCA 2011); *Morgan v. State*, 127 So. 3d 708 (Fla. 5th DCA 2013)).

The prosecution, therefore, "compounded the error" by arguing that "during closing that the Petitioner's act of violating the injunction completely took away his right to rely on self-defense." [*Id.* at 54]. Furthermore, trial counsel's failure to make any objection inflicted prejudice on Petitioner since "the misstatement of law, coupled with the absence of . . . [a] special jury instruction explaining that use of deadly force was still justifiable if Petitioner had retreated to a wall or if retreat would have been futile, negated Petitioner's sole defense and undermined confidence in the verdict." [*Id.* at 54].

Respondent counters, arguing that Petitioner's counsel did object to the prosecutor's closing argument — just on different grounds than Petitioner raises here. [ECF No. 7 at 32]. Petitioner's counsel objected "to the prosecutor's closing as a mischaracterization of the law because Petitioner was invited, so there was no burglary and no reason to retreat." [*Id.*] (citing [ECF No. 9-1 at 1189–90]). Petitioner adds only one paragraph in his Reply for this Ground, stating, in part, that the "prosecutor's remark during closing that self-defense was inapplicable because Petitioner was violating an injunction was a blatant misrepresentation of the law which negated Petitioner's only defense." [ECF No. 10 ¶ 19].

(i)     Analysis.

First, the Court agrees with the reasoning provided in the postconviction court's order. Specifically, "the prosecutor was entitled to argue how the elements of this instruction, when compared to the evidence, did not support Defendant's theory of the case and version of the events." [ECF No. 8-2 at 189]; *see also* [*id.* at 280) (Fourth DCA affirming denial of Petitioner's 3.850 motion]. The instruction provided as follows:

> However, the use of deadly force is not justified if you find Martin Mahon used force to initially provoke the use of force against himself, unless: The force asserted toward the defendant was so great, that he reasonably believed he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger, other than using deadly force on Gillian Johnston.

[ECF No. 9-1 at 1123]. Second, the record indeed shows that Petitioner's counsel objected right after the prosecution told the jury that Petitioner "had to be doing something lawful and had a legal basis for doing it. The injunction took this away." [ECF No. 9-1 at 1189].

> COUNSEL: That's a mischaracterization, Judge.

> THE COURT: In what aspect?

> COUNSEL: He was invited. If he's invited, then it's not a burglary. This is no reason to retreat.

> THE COURT: But it's part of the self-defense language. Overruled.

[ECF No. 9-1 at 1189–90]. Since counsel *did* object, that greatly diminishes a successful *Strickland* violation. Counsel's "strategic decisions" on the manner to object do not constitute ineffective assistance. *See Evans v. McNeil*, No. 08-14402-CIV, 2011 WL 9717450, at *17 (S.D. Fla. June 20, 2011) (quoting *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)) (emphasis deleted), *aff'd in part, rev'd in part sub nom. Evans v. Sec'y, Fla. Dep't of Corr.*, 699 F.3d 1249 (11th Cir. 2012); *see also Ross*, 487 U.S. at 91.

This Court would consider it "futile for trial counsel to object to the comments . . . based on the above-mentioned remarks by the Prosecutor, given the 'wide latitude' Florida law affords counsel in closing arguments." *See Austin v. Dixon*, No. 20-62294-CV, 2023 WL 9184847, at *13 (S.D. Fla. Nov. 28, 2023) (citing *Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982)), *appeal dismissed sub nom. Austin v. Sec'y, Fla. Dep't of Corr.*, No. 24-10039-D, 2024 WL 3243834 (11th Cir. Feb. 14, 2024); *cf. Ford v. State*, 802 So. 2d 1121, 1130 (Fla. 2001) (holding that a mistrial is

appropriate only when the prosecutorial comments are so prejudicial as to spoil the defendant's entire trial).

Petitioner has not shown such egregious misconduct on behalf of his counsel as to violate his constitutional protections. *Cf. Reese v. Sec'y, Fla. Dep't of Corrs.*, 675 F.3d 1277, 1291–92 (11th Cir. 2012) (holding no prosecutorial misconduct or due process violations in the prosecutor's closing argument in a death penalty trial when he asked, *inter alia*, the "jurors to place themselves in the position of [the victim]" since the crime is "every woman's nightmare"). Counsel clearly explained Petitioner's theory that his presence was lawful because he was invited and that he had no duty to retreat if he feared imminent death or great bodily harm. But the jury, by its verdict, apparently rejected the defense. Petitioner has failed to establish his counsel's performance prejudiced his defense. *See Strickland*, 466 U.S. at 687. In sum, none of Petitioner's four Grounds for federal habeas relief are viable. The Petition should be denied.

## V.     EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the Petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318–19 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2245 (2017). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not warranted here.

## VI.     CERTIFICATE OF APPEALABILITY

28

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a COA only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when the district court has rejected a claim on procedural grounds, the Petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration of the record, this court should deny a COA. Notwithstanding, if Petitioner disagrees, he may bring this argument to the attention of the District Judge in objections.

## VII.   CONCLUSION

Based upon the foregoing, it is recommended that the petition for habeas corpus [ECF No. 1] be **DENIED**; that no Certificate of Appealability Issue; that final judgment be entered; and that the case be closed.

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Judge within **fourteen days** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade*

*Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

     **SIGNED** this 29th day of April, 2025.

_____

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Rodney Smith**; and

       **All Counsel of Record**